COLONIAL BUILDING AND LOAN ASSOCIATION

*v.*

MARGARET GRIFFIN et al.

[Submitted September 1st, 1915.   Decided December 10th, 1915.]

1. In a suit brought by the assignee of a mortgage executed by a married woman and her husband, comprising her own property, where she filed an answer, in the nature of a cross-bill, praying that the bill be dismissed and that the mortgage be declared not a lien upon her property, and for other relief upon the following grounds: "1. That she did not sign a mortgage to secure a pre-existing debt of her husband's. 2. That she was induced to sign, as maker, a series of notes, and that the mortgage she gave to Max Sandt was to secure said notes and not to secure the debt of her husband, although she avers that said notes were given as part of the consideration for the saloon sold by the said Sandt to her husband. 3. That she never received any benefit to her use, or to the benefit of her separate estate, and that said notes and mortgage were invalid according to section 5 of the Married Woman's act and the amendments thereto."—*Held*, that the answer assumes that if the notes are void within the meaning of the fifth section of the act relating to the property of a married woman, the mortgage is likewise void as being embraced within the provisions of the same section.

2. These assumptions, however, are erroneous in this, that while the contract contained in the notes, being purely executory (if within the statute), cannot be enforced, the conveyance by the mortgage, being executed, if given to secure the husband's debt, is good, and her title in equity can be enforced.

3. Inasmuch as the record shows that the wife was the maker of the notes, which were given as part consideration for the purchase of the saloon sold by the defendant to Sandt, the payee, to her husband, nothing appears to bring the case within the second proviso of section 5 of the Married Woman's act, and therefore the notes are void.

4. It is an established rule that when one gives an obligation which is void, or avoided, in payment or discharge of the existing obligation, the prior obligation continues and is enforceable.

5. Therefore, when the husband delivered the void notes of his wife for the part of the purchase-money which remained unpaid at the confirmation of the sale, he was and continued liable to pay the balance of the consideration, being the identical sums mentioned in said notes to the vendor, and, being so liable, the notes and mortgage in question were given to secure the payment of the husband's debt, with the result that the mortgagee had, before the assignment, good right in equity to

foreclose the mortgage to pay this debt of the husband's, and an assignee has a like right because he took by assignment the debt of the husband to sustain his right under the mortgage, although the husband's right might not, in express words, have been assigned thereto.

6. As the wife understood that she was giving a mortgage to secure the payment of the unpaid purchase price, and as this price was erroneously converted into her supposed debt, full justice will now be rendered to her by now treating the mortgage as valid for the debt which was intended to be secured.

7. The answer does not disclose duress exercised by the husband upon his wife.

8. Neither can the answer by way of cross-bill be sustained on the ground of misrepresentation, in that the wife's husband told her that the signing of the notes and the mortgage by her was a matter of form and that he would take care of the notes, inasmuch as such language could not convey to the wife the idea that she would incur any liability by signing the notes and mortgage because of the last sentence, namely, "and that he would take care of the notes."

9. It will be presumed that the parties honestly intended that the notes and mortgage should be valid and that neither side intended to mislead the other.

10. The clear import of the language used is, that while the wife would be liable if the husband did not pay the notes, yet in effect, her signing would be a mere matter of form because he would pay them, thereby not only discharging her from what she understood was a personal liability on the notes, but relieving her lands from the lien of the mortgage.

11. Moreover, the representation, for aught that appears, was secretly made by the husband to the wife, there being no allegation that the mortgagee joined in the representation or had any knowledge of it. To permit a wife in such a case to avoid her mortgage on the ground of false representations made to her by her husband secretly and without the knowledge or connivance of the mortgagee, where she had duly acknowledged the instrument after the contents had been made known to her, would tend to greatly weaken and impair mortgage security and is against public policy.

12. Neither can the answer by way of cross-bill be sustained on the ground of undue influence. The true interpretation and meaning of such answer by way of cross-bill declared.

13. In this state the certificate of the officer taking the acknowledgment is *prima facie* evidence, and the burden of proof is on the wife to show it is untrue.

14. Inasmuch as the married woman went before an officer designated by law to perform certain prescribed duties, and acknowledged the mortgage in due form of law on a private examination, separate and apart from her husband, she cannot now assert that, prior to such examination, her husband exercised the coercion which she charges, it not appearing that the mortgagee had any knowledge of the coercive acts of the husband and was in no manner a party to them, and had no reasons to assume that the facts contained in the certificate of the officer were untrue.

*Mr. John F. Marion,* for the defendant Margaret Griffin.

*Messrs. Treacy & Milton,* for the defendant George I. Macklin.

GRIFFIN, V. C.

The complainant filed its bill to foreclose, making the defendant Margaret Griffin a party as mortgagor, and also making the defendant George I. Macklin a defendant as the assignee of a mortgage made by the said defendant mortgagor to Max Sandt, and assigned by said Sandt to Macklin.

The bill sets forth the making of the mortgage by said mortgagor and her husband to one Sandt on October 7th, 1912, to secure the payment of a note of $2,500, which mortgage was duly recorded; and also the assignment of the mortgage by Sandt to the defendant Macklin by assignment, dated March 31st, 1914, recorded April 1st, 1914.

The defendant Margaret answered the bill, and also filed an answer by way of cross-bill against the defendant Macklin, setting up that her husband, Joseph, was negotiating for the purchase of a saloon in Jersey City from the said Sandt; that he had been engaged in the saloon business in lower Jersey City, and was desirous of securing the store at the junction of Communipaw avenue and Grand street, and desired her to go to New York

"as it would be necessary for her to sign some papers before he could obtain possession of the said saloon at the junction of Communipaw avenue and Grand street, Jersey City; that she demurred to executing any papers, informing her husband that as she had no interest in the transaction of the purchase of the saloon she did not think that she ought to be present at the negotiations or sign any papers. Upon her husband receiving her refusal he became greatly offended and charged her with standing in his way of taking advantage of a good opportunity. Not desiring to destroy her husband's success in business, she consented to attend the negotiations for the purchase of the saloon."

She then says that she went with her husband to an office in the downtown section of New York, which she was informed was a law office;

"that there were present the lawyer, whom she did not know, her husband and a person she was informed was Max Sandt, and she was requested by her husband and the lawyer to sign some notes, which she was informed her husband was to give to said Max Sandt to secure the purchase price of said saloon; and at the same time she was requested to sign a mortgage to secure the payment. She again refused to sign said notes and mortgage, and her husband became very angry, and told her it was only a matter of form, that he would take care of the notes; and after considerable persuasion on the part of her husband and because of her fear to anger him, she consented to execute the necessary papers; that she did not sign a mortgage to secure a pre-existing debt of her husband's, but on the contrary she was induced to sign as maker a series of promissory notes [the exact amounts and dates she does not now recall], and that the mortgage she gave to Max Sandt was to secure said notes and not to secure a debt of her husband's, as reference to said mortgage will more fully appear; that said notes were given to the said Sandt as part of the consideration for the said saloon sold by the said Sandt to her husband, and that she never directly or indirectly received any money, property or thing of value for her own use or benefit, or for the use, benefit or advantage of her separate estate, and that she never paid any of said notes as they came due, or was she ever requested to, nor had she ever paid any interest on any mortgage, or was she ever requested to, and that said notes and said mortgage are invalid according to section five of the Married Woman's act and the amendments thereto."

The defendant Macklin now seeks to strike out the part of the answer filed by way of cross-bill, under rule 213 of this court, for want of equity.

The answer, in the nature of a cross-bill, sets forth the following upon which Margaret founds her right to relief, viz.:

"1. That she did not sign a mortgage to secure a pre-existing debt of her husband's. 2. That she was induced to sign, as maker, a series of notes, and that the mortgage she gave to Max Sandt was to secure said notes and not to secure the debt of her husband, although she avers that said notes were given as part of the consideration for the saloon sold by the said Sandt to her husband. 3. That she never received any benefit to her use, or to the benefit of her separate estate, and that said notes and mortgage were invalid according to section 5 of the Married Woman's act and the amendments thereto."

Her prayer is that the bill of complaint be dismissed as to the particular mortgage made to Sandt, and assigned to Macklin, and that it be declared not a lien upon the property, and for other relief.

The answer assumes that if the notes are void within the meaning of the fifth section of the act relating to the property of married women, the mortgage is likewise void as being embraced within the provisions of the same section. These assumptions, however, are erroneous in this, that while the contract contained in the notes, being purely executory (if within the statute), cannot be enforced, the conveyance by the mortgage, being executed, if given to secure the husband's debt, is good, and her title in equity can be foreclosed. *Warwick* v. *Lawrence, 43 N. J. Eq. 179, 184; Shipman* v. *Lord, 58 N. J. Eq. 380, 389; Walker* v. *Joseph Dixon Crucible Co., 47 N. J. Eq. 342, 345; Campbell* v. *Tompkins, 32 N. J. Eq. 170; Same Case, 33 N. J. Eq. 362; Ferdon* v. *Miller, 34 N. J. Eq. 10; Same Case* (at p. *531*); *Galway* v. *Fullerton, 17 N. J. Eq. 389; Merchant* v. *Thompson, 34 N. J. Eq. 73; Davidson* v. *Biddleman, 82 N. J. Law 92.*

The record discloses that the wife was the maker of the notes, which were given as part consideration for the purchase of the saloon sold by Sandt, the payee, to her husband. Nothing appears to bring the case within the second proviso of section 5 of the Married Woman's act, and therefore the notes are void. *Vleit* v. *Eastburn, 63 N. J. Law 450, 454; Same Case, 64 N. J. Law 627.*

Assuming that the mortgage is void if there exists no debt secured thereby (*Bliss* v. *Cronk, 62 N. J. Eq. 496; Same Case, 68 N. J. Eq. 655*), the question arises, is there such debt?

It is an established rule that when one gives an obligation which is void, or avoided, in payment or discharge of an existing obligation, the prior obligation continues and is enforceable. *Executors of Williams* v. *Williams, 15 N. J. Law 255, 258,* and cases therein cited; *Leonard* v. *Trustees of First Congregational, &c., 2 Cush. 462,* and cases therein cited.

Therefore, when the husband delivered the void notes of his wife for the part of the purchase-money which remained unpaid at the consummation of the sale, he was and continued liable to pay the balance of the consideration, being the identical sums mentioned in said notes to the vendor, and being so liable, it may be said that the notes and mortgage in question were given to

secure the payment of the husband's debt; with the result, under the authorities above cited, that in the absence of the other defences set up in the answer by way of cross-bill, the mortgagee had, before the assignment, good right in equity to foreclose the mortgage to pay this debt of the husband's; and his assignee, under the circumstances of this case, has a like right, because he took by assignment the debt of the husband to sustain his right under the mortgage, even though the husband's debt might not, in express words, have been assigned thereby. *1 Jones Mort. 641 § 829.*

The case of *Bliss* v. *Cronk, supra,* is not contrary to the views above expressed, as the wife here fully comprehended the transaction. She gave her notes, assuming them to be valid, and executed her mortgage to secure the payment of the moneys mentioned in the notes, which really constituted the debt of her husband. Now, after the mortgagee has parted with the title and possession of the property sold to the husband on the faith of the security delivered, the wife has discovered that the notes are void, and now seeks to avoid her mortgage on the ground that the notes, being void, the mortgage is likewise. A court of equity in such case will look at the substance and give effect to the admitted intentions of the parties, rather than follow the erroneous form adopted for carrying them into effect, which might lead to injustice, especially where there is no fraud or conduct which might move a court of equity to refuse its aid, and where the rights of innocent parties are not affected. If these views be correct, then, as the wife understood that she was giving a mortgage to secure the payment of the unpaid purchase price, and as this price was erroneously converted into her supposed debt, full justice will be rendered to her by now treating the mortgage as valid for the debt which was intended to be secured.

The answer by way of cross-bill further attacks the validity of the mortgage, alleging matter amounting to an assertion that the wife executed the mortgage under duress, misrepresentation and undue influence.

It is quite clear that the answer does not disclose duress exercised by the husband upon his wife, Margaret. In *Remington* v. *Wright, 43 N. J. Law 451,* where the husband made a threat of

suicide to induce his wife to sign a promissory note, the chancellor, speaking for the court of errors and appeals, said: "By the common law, the defence of duress, indeed, embraced threats of injury to husband, wife, parent or child; but its scope does not include a threat of suicide. Obviously, in view of the facility of making a defence on the ground, the difficulty of meeting it, and the temptation to fraudulent imposition it would hold out to allow it, it would be against public policy to extend the defence to that kind of pressure."

In *Lomerson* v. *Johnston, 44 N. J. Eq. 93,* creditors of a husband induced his wife to join with him in giving a mortgage on her real estate to secure his debt by telling her that her husband had been guilty of the crime of embezzlement for which he could be imprisoned, such statements creating fear and apprehension in the mind of the wife. Vice-Chancellor Bird said: "It is plain that pressure which does not amount to duress at common law may be considered in equity sufficient to set aside or to resist a contract," and finding that there was such undue pressure exerted upon her by the complainant as to destroy her free agency in the execution and acknowledgment of the mortgage, declared it void. The court of errors and appeals, however, on appeal, in *47 N. J. Eq. 312,* said: "The court of chancery, by its decree, set aside the mortgage * * * considering that it was executed under a species of duress. With the result reached we agree, resting our decision, however, upon the ground that it is inequitable to permit the complainant to retain a security for the husband's debt obtained by allowing a false apprehension of the husband's danger to affect the mind of the wife."

In *Ball* v. *Ball, 79 N. J. Eq. 170,* the court of errors and appeals reaffirmed the doctrine of *Lomerson* v. *Johnston, supra.*

The answer, by way of cross-bill, therefore, cannot be sustained on the ground of duress.

As to misrepresentation: In the two latter cases cited, it appeared that the party benefited actively joined in the transaction condemned. Here the wife says that her husband told her that the signing of the notes and the mortgage by her was a matter of form, and that he would take care of the notes. This language could not convey to the wife the idea that she would

incur no liability by signing the notes and mortgage because of the last sentence, viz., "and that he would take care of the notes." It may be assumed that both husband and wife were unacquainted with the provisions of the Married Woman's act above mentioned, and both understood at the time the notes and mortgage under discussion were delivered to the payee-mortgagee as the consideration of the property purchased by the husband, reciprocal rights and liabilities were created therein.

It will be presumed that the parties honestly intended that the notes and mortgage should be valid, and that neither side intended to mislead the other. *Mayer* v. *Roche, 77 N. J. Law 681, 684.* The defence now interposed is an afterthought. The clear import of the language used is that while the wife would be liable if the husband did not pay the notes, yet, in effect, her signing would be a mere matter of form because he would pay them, thereby not only discharging her from what she understood was a personal liability on the notes, but relieving her lands from the lien of the mortgage.

But if the above interpretation is strained, still there is no defence under this head shown in the answer by way of cross-bill. The representation, for aught that appears, was secretly made by the husband to the wife. There is no allegation that Sandt, the mortgagee, joined in the representation or had any knowledge of it. To permit a wife, in such a case, to avoid her mortgage on the ground of false representations made to her by her husband secretly and without the knowledge or connivance of the mortgagee, where she duly acknowledged the instrument after the contents had been made known to her (the effect of which will be discussed later), would tend to greatly weaken and impair mortgage security, and is against public policy, within the reasoning of the chancellor in the above excerpt from the opinion in *Remington* v. *Wright, supra.*

The last question to be considered is that of undue influence.

The bill does not allege the acknowledgment of the mortgage; the answer by way of cross-bill does not assert that it was not acknowledged. As this allegation should be pleaded by the one who seeks to take advantage of it, I will assume, on this motion, that prior to recording, the mortgage was duly acknowledged in

the manner required by law, and that the only grounds upon which the wife seeks relief are those stated in her answer in the nature of a cross-bill. *Marsh* v. *Mitchell, 26 N. J. Eq. 497, 499; Same Case, 27 N. J. Eq. 631.*

Treating her failure to allege that she did not acknowledge as an admission on this motion that she did, the case, most strongly stated in her favor, is as if she should say, "My husband, by undue influence, coerced me into signing the mortgage, and likewise in acknowledging before the officer that I signed, sealed and delivered the mortgage as my voluntary act and deed, the contents having first been made known to me by the officer, and that upon a private examination, separate and apart from my husband, I further acknowledged that I so signed, sealed and delivered the mortgage freely and without any fear, threats or compulsion of or from my husband; that the officer thereupon signed the certificate of acknowledgment in testimony of its truth, and the certificate is true; Mr. Sandt, the mortgagee, neither took part in the coercion, nor did he know that my husband procured me to execute and acknowledge the mortgage by the use of any influence which might be considered undue, but, on the contrary, accepted the mortgage in good faith in the belief that all legal formalities had been complied with, and that the mortgage was good. Now, after more than two years, when the mortgage, by assignment, has come to the hands of an innocent purchaser, I desire to have the mortgage declared void as procured by this coercion."

In *Corby* v. *Drew, 55 N. J. Eq. 387, 390,* Vice-Chancellor Stevens said: "At common law the wife could only pass her freehold estate by fine and common recovery." The first act providing for an acknowledgment by the wife was passed in 1743. Another act was passed June 7th, 1799 (*Elm. Dig. 83 § 12*), and the act to abolish fines and common recoveries was passed June 12th, 1799. *Elm. Dig. 90 § 56.* The statutory acknowledgment was thereby substituted for the procedure of levying a fine to pass the *feme covert's* estate, and the facts to be ascertained by the officer before he signs the certificate, are the same as were required to be found by the judge before he permitted the fine to be levied. *Hitz* v. *Jenks, 123 U. S. 297, 298; 8 Sup. Ct. Rep.*

*143 (146)*. On the levy of the fine neither the wife nor her heirs could be permitted to aver that she was not examined and did not consent, "for this," says Lord Coke, "should be against the record of the court and tending to the weakening of the general assurances of the realm." Yet, if any fraud or undue practice was used in obtaining the fine, the court of chancery would relieve against it, as against any other conveyance. *Hitz* v. *Jenks, supra,* citing cases supporting the doctrine.

In this state the certificate is *prima facie* evidence of its contents, and the burden of proof is on the wife to show that it is untrue. But with this point I have no concern, because the case as presented admits its truth; but the wife seeks to overcome her deed on the ground of the coercion above mentioned. The case of *Young* v. *Duval et al., 109 U. S. 573; 3 Sup. Ct. Rep. 414,* was a case very much like the present. There the wife sought to set aside her deed because she was required, ordered and commanded to sign the same by her husband and a person who was with him; and also because the contents of the deed were not explained to her, and she was not examined separate and apart from her husband. The grantee was not present, knew nothing about the coercion of her husband, nor of any defect in the acknowledgment. In that case, the court seemed to consider that if the certificate was true the wife could not obtain relief, and dealt particularly with the probative force of the certificate and the duties of the officer in making it. The court said (at *p. 416*) : "The duties of that officer were plainly defined by statute. It was incumbent upon him to explain the deed fully to the wife, and to ascertain from her whether she willingly signed, sealed and delivered the same, and wished not to retract it. The responsibility was upon him to guard her against coercion or undue influence upon the part of the husband, in respect of the execution and delivery of the deed. To that end he was required to examine her privately and apart from the husband. These facts were to be manifested by a certificate under his hand and seal. Of necessity, arising out of considerations of public policy, his certificate must, under the circumstances disclosed in this case, be regarded as an ascertainment, in the mode prescribed by law, of the facts essential to his authority to make it; and if, under

such circumstances, it can be contradicted, to the injury of those who in good faith have acted upon it—upon which question we express no opinion—the proof to that end must be of such a character as will clearly and fully show the certificate to be false or fraudulent. *Insurance Company* v. *Nelson, 103 U. S. 544, 547.* The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous."

The reasoning of the foregoing case is also in line with the views of the court of errors and appeals, as expressed by the chancellor in the case of *Remington* v. *Wright, supra,* and is cited with approval in *Hitz* v. *Jenks, supra.*

It seems to me that when this lady went before the officer whose duty, prescribed by law, was as above stated, and acknowledged the mortgage in due form of law, on a private examination separate and apart from her husband, she cannot now assert that prior to such examination her husband exercised the coercion which she charges—it not appearing that the mortgagee had any knowledge of the coercive acts of the husband, was in no manner a party to them, and had no reason to assume that the facts contained in the certificate of the officer were untrue.

As the defendant Margaret, on the facts pleaded, is not entitled to the affirmative relief prayed for, I will advise an order striking out the answer by way of cross-bill.