WILLIAM T. ROE AND SUSAN ROE, appellants,

*v.*

CHARLES V. MOORE, respondent.

In order to set aside, as fraudulent against creditors, a conveyance to one creditor, he must have participated in or have been cognizant of the grantor's unlawful motives when he accepted the conveyance.

On appeal from a decree advised by Dodd, V. C., whose opinion is reported in *Roe* v. *Moore, 8 Stew. Eq. 90.*

*Messrs. Roe & Shepherd,* for appellants.

*Mr. Charles D. Thompson,* for respondent.

The opinion of the court was delivered by

KNAPP, J.

In my judgment, formed on carefully examining all the testimony, the court below decreed incorrectly in this case. The evidence does not, as I think, justify the conclusion of the learned vice-chancellor who heard and decided the cause, that the conveyance in question was the result of a combination of the defendants to delay or defraud the complainant, or other creditors of William Roe. If such a purpose on the part of the defendant William Roe would of itself suffice to impeach the conveyance, I should feel great unwillingness in yielding to the view of the vice-chancellor with respect to him, and the purpose which controlled him. For the same evidence which is invoked as proof of his fraud, is equally cogent in showing his design to have been merely a preference of his mother over other creditors. The *onus* of proving fraud is on the complainant who avers it. But it is too well established as the rule upon this subject, to admit of question, that in order to invalidate a conveyance on the ground that it designed the hindrance, fraud or defeat of creditors, the grantee as well must have participated in or have been cognizant of, or chargeable with knowledge of the unlawful motive, when he accepted the conveyance. *Mer-*

*chants Bank* v. *Northrup, 8 C. E. Gr. 582 ; Metropolitan Bank* v. *Durant, 7 C. E. Gr. 35 ; S. C., 9 C. E. Gr. 556 ; Atwood* v. *Impson, 5 C. E. Gr. 150.*

Mrs. Roe, on the evidence, stands entirely clear of any just imputation against her motives, or of a design to aid her son in any fraud, if, indeed, he was moved by bad faith towards his other creditors. She was an honest and meritorious creditor of her son, having loaned to him moneys at various times out of the fund which she received from the estate of her husband, and relied upon as her only means of support in her declining years. She exhibits claims against her son so arising, certainly amounting in principal and unpaid interest to the sum of $1,750, with others of less amount not definitely proved. The fair value of the land embraced in the deed, according to the evidence, did not exceed $3,250, and was granted subject to a mortgage debt, principal and interest, of $1,537. The conveyance was not to any extent voluntary, but upon full consideration. The assumption that this money was an advance or gift *inter vivos* to the son has no foundation in the proofs. She loaned to her children to aid them, rather than to strangers. They received from her not in equal amounts, but as they required aid. That she intends to let these debts make up the shares which they, respectively, shall be given on her death varies in nothing the character of the indebtedness. She may change her mind in all this arrangement at pleasure. They stand now as loans for which the law secures to her payment as upon contract on her demand.

Being, then, a valid debt, it was her legal right, acting in honesty and good faith, to secure it by encumbrance in her favor upon the property of her debtor, or absolutely to purchase it by the surrender of credits sufficient in amount to constitute an honest, adequate consideration for the sale. It was her right to be vigilant and foremost in attaining this end, although thereby other creditors were postponed or put to other disadvantage. It was equally the right of the debtor, if he so willed it, although in failing circumstances or insolvent, to prefer her in payment to other creditors. *Atwood* v. *Impson, supra ; Vreeland* v. *Jacobus, 4 C. E. Gr. 231.*

The principles here indicated have their foundation in property rights, and rest firmly on settled adjudications of the courts; and a transaction which ranges itself within their protection, as the one in question in my judgment does, stands impregnable against any attack by other creditors. The debt due was an honest one. It was, as stated, for a considerable portion of a fund constituting the sole means of support of an aged woman, in the hands of her son as a loan. Every good instinct in such a debtor would plead for its payment or security, if within his power, to such a creditor. It was, as shown, in amount fully adequate and equal to the value as proved of the debtor's interest in the lands embraced in the conveyance, and sufficient to pay for its absolute purchase, if such had been the real purpose of the parties. As security for a loan to such an amount, every prudent lender would have rejected it.

But this conveyance, although absolute on its face, was, as is plainly deducible from the evidence, designed by the creditor as security for the payment of her debt. Her declarations and conduct show her motive to have been, not to acquire the property for a permanent possession, but to secure herself. A mortgage in form would more correctly and definitely have expressed her purpose, but the course pursued was, under the circumstances, justifiable, and relieved of all suspicion, under the belief that her debt more than equaled the value of the lands conveyed; the fair deduction from her own testimony and the whole case being that, without the delay and expense of foreclosure, she designed to sell the property to repay herself. Consistent only with this idea is her course in frankly tendering to the complainant at the first opportunity a conveyance to him of the lands, subject to her claim—an offer formally repeated in her answer filed in the cause. In her own language, all she wanted was, " to get her own—to secure her own."

The deed in form being absolute, could, in a court of law, be given effect as such only. But here effect will be given to the intention of the parties, and what they designed as a security merely will be regarded as a mortgage. In this feature the case bears a resemblance to that of *Demarest* v. *Terhune, 3 C. E. Gr.*

*532*, in which lands held by absolute conveyance, but designed to secure the grantee's debt, were ordered to be sold to pay first the claim of the grantee secured by his deed, and out of the surplus the costs and complainant's claim. These lands being held, then, as a pledge, it is right that the complainant should have, to apply on his judgment, whatever interest or value may possibly be found in them, beyond the principal and interest of her debt. And it is in accordance with the practice in equity to decree the sale of lands and disposition of the proceeds when trusts are found to exist, or liens or equitable rights established therein, in favor of creditors, when by such course the equitable rights of parties may be adjusted, and the form of pleading found in this case has been held to be no impediment to granting such relief. *Demarest* v. *Terhune, supra; Condit* v. *Blackwell, 4 C. E. Gr. 193*, and cases there cited.

The complainant could, by accepting her offer, have had, without cost, the advantage of this position. The same result may still be secured to him, by ordering the lands to be sold, if he believes, as he has averred in his bill, that they are worth, and will bring at a sale more than enough to satisfy her debt. But we think that the appellant having tendered the premises to the respondent, should not, under the circumstances, have her security diminished by the costs and expenses of a sale, if the premises shall not sell for enough to answer her demands and such cost. Against these the respondent should, before an order to sell is decreed, give satisfactory indemnity.

The case should be remitted to the court of chancery, with instructions that if the respondent shall give satisfactory security in that court for the payment of the costs and expenses of sale, which the proceeds of sale, after satisfying the debt due the appellant Mrs. Roe with interest, shall be insufficient to pay, then it be referred to a master to ascertain the amount so due to her; which sum should be declared a first lien, as between these parties upon said lands; and that there should be a decree below in favor of the respondent, and direction to a master to sell all the right, title and interest of the appellants in said lands at public sale; and the proceeds thereof should be applied first to the

payment of the amount found to be due to the appellant Mrs. Roe with the interest; and secondly, out of the surplus, if any such there be, the costs and expenses of such sale be paid; and in the third place, the judgment of the respondent be paid. Should the respondent fail to give the required security within such time as the chancellor shall limit and appoint, that then the bill be dismissed.

The decree should be reversed, and the case remitted with these instructions to the court of chancery.

*Decree unanimously reversed.*