This is a rehearing of a case which was sent back to the court of chancery by the court of errors and appeals for certain errors in the court below.
The facts of the case, as stated in the opinion of the higher court, are as follows:
"The bill was filed to set aside, as fraudulent, a deed of conveyance for premises located in the city of Orange. The deed was made on May 5th, 1921, by Frances Virgil and Louis Virgil, her husband, to Mamie Virgil, the wife of Andrew C. Virgil. Mamie Virgil and Frances Virgil had been the owners of the property as tenants in common. The effect of the deed in question was to vest the entire ownership of the property in Mamie Virgil. The bill of complaint *Page 119 
alleges that on April 2d 1921, the complainants Mary Babirecki, by her next friend, Stephen Babirecki, her father, and Stephen Babirecki, individually, commenced an action in the Essex county circuit court against Andrew G. Virgil, Frances Virgil and Louis Virgil, as partners, to recover damages for injuries sustained by Mary Babirecki, an infant three and one-half years of age, as the result of an accident alleged to have been due to the negligence of the defendants, and also to recover the damages sustained by the father, Stephen Babirecki, as a result of the accident to his child. The accident occurred on January 28th, 1921. The case was tried on February 10th, 1922, and resulted in a verdict in favor of the child for $4,000, and a verdict for the father for $1,068, which was subsequently reduced to $568. Judgments were entered and execution in the usual form tested on April 5th, 1922, were issued and delivered to the sheriff of Essex county, who was unable to find any goods, chattels or lands of the defendants upon which to levy. The executions were returned by the sheriff wholly unsatisfied. The personal property of the partnership had been mortgaged to one Rose Cursi at the time of the conveyance to Mamie Virgil of the interest of Frances Virgil in the real estate. The deed of conveyance to Mamie Virgil was a warranty deed. The consideration stated in the deed was one dollar and other good and valuable consideration. It had affixed thereto revenue stamps to the amount of one dollar. The answer filed by the Virgils to the bill of complaint set up that the deed of May 5th, 1921, was made in pursuance of an agreement in writing made between Frances Virgil and Mamie Virgil, dated August 16th, 1917; that the deed by which Frances Virgil became seized of an undivided one-half interest in the premises was not supported by any consideration from Frances Virgil, and was conditional upon the payment by Frances of $2,500 within three years; that should Frances fail to pay this sum she was to reconvey her interest in the property to Mamie Virgil. The agreement of August 16th, 1917, was produced at the hearing. It was written upon a leaf taken from an old account book. It was, apparently, *Page 120 
drawn by an unskilled person. It bore upon its face the evidence of being a home-made document. A photostat copy of it is embodied in the record. The purport of the agreement appears to be that if Frances Virgil does not pay to Mamie Virgil interest annually at six per cent. on $2,500 and make payments to her of $2,500 within three years, then Frances is to deed her interest in the premises situate on Hill and Commerce streets, Orange, to Mamie. Counsel for the complainants attempted to make a spirited attack upon this writing, especially as to the authenticity of its date, by cross-examination of the parties thereto as to why the agreement had been drawn at home, the date when drafted, the origin of the paper upon which it was written, the ink and pens used in its drafting, the consideration and the facts and circumstances surrounding its execution."
The court held as to the question of law as follows:
"When a tort claimant has reduced his claim to judgment, he may attack a voluntary conveyance made after the liability arose and before suit was brought to defeat his debt, on the theory that such judgment, when once obtained, relates back and establishes a debt as of the time when the original cause of action accrued.
"The burden of proving, when attacked as fraudulent, the consideration of a deed, where no consideration was paid at the time of the conveyance, is upon the grantee.
"Cross-examination on matters either directly in issue or directly relevant to the issue is a matter of right, and its exclusion error."
Complying with the direction of the court of errors and appeals a rehearing was had, and both the complainant and the defendant were heard.
The complainant confined his testimony at the rehearing to the introduction of certain documents bearing on the title to the property in question and testimony admitted by stipulation and the production of a member of the bar, whose testimony was unimportant. The defendants produced five witnesses, who testified as to the circumstances surrounding the making of the agreement of August 16th, 1917. *Page 121 
These are all the living witnesses to this transaction, and their testimony as to its bona fides was unshaken on cross-examination. Every opportunity was given to the complainant to produce additional testimony, and he was allowed the fullest latitude in his cross-examination.
The opinion of the court of errors and appeals says: "The vice-chancellor said: `The crux of the case is the alleged agreement between Mamie and Frances.' This was true."
That agreement was vigorously attacked and closely scrutinized at the rehearing, but the witnesses were positive in their statements as to its date and the facts and circumstances surrounding its drafting and execution.
I cannot escape the conclusion that this agreement was made when the witnesses said it was made and for the purposes indicated therein and testified to by these witnesses. Should I hold that this transaction was fraudulent, I should have to find that all the witnesses who testified were guilty of perjury.
In the case of Gray v. Folwell, 57 N.J. Eq. 446, it was held that "where a transaction is capable of two constructions, one that comports with honesty and one with dishonesty, the former should be adopted by the courts.
Having found that this agreement was a bona fide one, made at the time and for the purpose as testified, the question arises as to whether the deed, which grew out of this agreement, should be set aside. The agreement sets forth a consideration for the deed in that Frances was to pay to Mamie $2,500 within three years, and should she fail to do so, she was to reconvey her interest to Mamie. The testimony is clear that she failed to make these payments, and on demand of Mamie she reconveyed her interest in the property on May 6th, 1921. The agreement of 1917 antedated the suit in the circuit court by nearly four years, which was long before the accident that was the basis of the suit. Assuming, then, that the complainant was a pre-existing creditor, at which time Mamie was also a pre-existing creditor, in the absence of fraud on the part of the *Page 122 
grantee and due to a valuable consideration evidenced by the agreement, a preference is entirely legal.
In Roe v. More, 35 N.J. Eq. 526, the court said:
"In order to set aside, as fraud, against creditors a conveyance to one creditor, he must have participated in or have been cognizant of grantor's unlawful motives when he accepted the conveyance. A mother loaned her son $1,750, which was due, with interest, and the son conveyed the property to the mother. Being, then, a valid debt, it was her legal right, acting in honesty and good faith, to secure it by encumbrance in her favor upon the property of her debtor, or absolutely to purchase it by the surrender of credits sufficient in amount to constitute an honest, adequate consideration for the sale. It was her right to be vigilant and foremost in attaining this end, although thereby other creditors were postponed, or put to other disadvantage.
"It was equally the right of the debtor, if he so willed it, although in failing circumstances or insolvent, to prefer her in payment to other creditors."
And in the National Bank of the Metropolis v. Sprague etal., 20 N.J. Eq. 11, 13, 14, it was held:
"The law of this state does not forbid debtors, though insolvent, to prefer creditors by making payments of money or transfers of property or by giving mortgages or confessing judgments. And, although a preference thus created may operate to delay and hinder other creditors, yet, if not created for that purpose, but to secure or pay bona fide debts, it is lawful.
"Partners have the power, while the partnership assets remain under their control, to appropriate any portion of them to pay or secure their individual debts."
I believe there was no fraud in the making of the agreement, and that there was a valid consideration for the deed. Testimony taken at the rehearing has failed to change the opinion I formed at the first hearing.
I shall therefore advise a decree that the bill of complaint be dismissed. *Page 123