107 N.J. Super. 426 (1969)
258 A.2d 731
THOMAS J. O'NEILL, TRUSTEE IN BANKRUPTCY OF OFFICE BUILDINGS OF AMERICA, INC., FIRST JERSEY SERVICING CO., INC. AND FIRST JERSEY SECURITIES CORPORATION, BANKRUPTS, PLAINTIFF,
v.
ARTHUR A LITTLE AND THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 10, 1969.
*428 Mr. Frank J. Vecchione for plaintiff (Messrs. Crummy, Gibbons & O'Neill, attorneys).
Mr. James E. Masterson for defendant Rev. Arthur A. Little (Messrs. Kleinberg, Moroney, Masterson & Schachter, attorneys).
Mr. Charles W. Hutchinson for defendant The Equitable Life Assurance Society of the United States (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys).
MINTZ, J.S.C.
This is an action by a trustee in bankruptcy to set aside cash purchases of a series of annuity contracts made by the defendant Reverend Arthur A. Little (Rev. Little) with defendant The Equitable Life Assurance Society of the United States (Equitable). It is alleged that such purchases were made with intent to hinder, delay or defraud plaintiff, a creditor of Rev. Little, and should *429 be set aside to the extent necessary to satisfy the judgment plaintiff subsequently obtained against Rev. Little.
On or about March 14, 1963 Rev. Little loaned $50,000 to Office Buildings of America, Inc. He was repaid $52,500 by this corporation on May 15, 1963. On or about June 26, 1963 Office Buildings of America, Inc. and its related corporations filed petitions in bankruptcy. On September 24, 1963 plaintiff O'Neill was appointed trustee for said bankrupt corporations.
On October 3, 1963 Rev. Little entered into two annuity contracts with Equitable for which he paid a total of $50,000 in return for two lifetime annuities on which he was to receive the aggregate sum of $233.24 monthly. On October 14, 1963 he purchased a third annuity contract from Equitable for which he paid $15,000 designed to yield him $69.98 monthly.
On October 19, 1965 plaintiff's counsel wrote Rev. Little that as a creditor of Office Buildings of America, Inc. he received from it the sum of $52,500 within four months of the filing of the petition in bankruptcy. The letter further states that such payment constituted a preference and demanded a return of said sum.
In the pretrial order Rev. Little acknowledged receipt of the letter but did not stipulate the date when the same was received. It may reasonably be inferred that he received this letter in the due course of mail. Alexander v. Rekoon, 104 N.J.L. 1 (Sup. Ct. 1928). It certainly was received prior to October 27, 1965. On that date Rev. Little entered into a fourth annuity contract with Equitable for which he paid $15,000 and which was to yield him $70.82 monthly. On December 20, 1965 plaintiff instituted an action in this court against Rev. Little seeking the return of the $52,500, claiming the same to have been a preferential payment.
On October 25, 1966 Rev. Little wrote to Nathan Hilton, the agent for Equitable, who apparently sold him the annuities, in which he inquired as to the four annuities already purchased:
*430 1. Is an annuity purchased with your company in good faith unattachable?
2. Can a judge in bankruptcy court issue an injunction? Can he take the annuities or a percentage of the money which I am now receiving from your company?
In that letter Rev. Little also stated that "The money to buy the annuities is now in question," and further asked Mr. Hilton to "please keep this matter confidential." Hilton referred Rev. Little's letter for reply to Charles W. Muller, assistant counsel for Equitable. On November 4, 1966 Muller wrote Hilton that:
There is no statutory provision in New Jersey for annuities as there is for insurance whereby payments would be exempted from the claims of the annuitant's creditors.
It does not follow, however, that the Trustee in Bankruptcy could necessarily attack Father Little's annuities. These annuity contracts were entered into by the Equitable in good faith with Father Little. The consideration paid for those contracts is the property of the Equitable. Father Little has no right to surrender these contracts. His only right under each contract is to receive the monthly annuity payments as they become due provided he is alive on the due date.
If the Trustee in Bankruptcy is successful in claiming preference with respect to the repayment made to Father Little, it may be that he would ask the court to issue an order directing that annuity payments be made to him rather than to Father Little. Such an order, however, would not operate to alter the contracts so as to prevent the Equitable from insisting upon evidence of survival of the annuitant each time a monthly payment becomes due. Normally, this evidence is the personal endorsement of the annuitant on the monthly check. In the absence of such an endorsement, we would require the Trustee in Bankruptcy to furnish us with proof of Father Little's survival each month. In the long run, it might be more difficult for the Trustee in Bankruptcy to collect the monthly instalments and he might conclude that he would not be justified in going to such an expense.
Muller authorized Hilton to deliver a copy of that letter to Rev. Little, and I am satisfied he did so. On December 3, 1966 Rev. Little entered into a fifth annuity contract with Equitable for which he paid Equitable $16,117.36 and which was to yield him $80 per month.
*431 On June 15, 1967 a consent judgment was entered in favor of plaintiff and against Rev. Little for $23,000 on the complaint filed by the plaintiff on December 20, 1965. As a consequence of the purchase of the fifth annuity Rev. Little divested himself of all assets that might be reached by plaintiff to satisfy his judgment, except for the aggregate monthly payments of $454.04 to be received under the five annuity contracts.
N.J.S.A. 17:35B-10 became effective October 7, 1968 and provides that payments from annuity contracts up to $500 per month are not subject to execution or other legal process. The statute is applicable to annuity contracts issued prior and subsequent to its effective date. However, the exemption of annuity payments from execution or other legal process does not apply:
(1) * * * to amounts paid, with intent to defraud creditors, for or as consideration for any such annuity, with interest thereon, and of which the creditor has given the insurer written notice at its home office prior to the making of the payments to the annuitant out of which the creditor seeks to recover. * * * [N.J.S.A. 17:35B-10(a) (1)].
On January 10, 1969 an order was entered herein directing Equitable to make the monthly payments on the annuities to plaintiff, the same to be held in trust by plaintiff pending the further order of the court.
At the conclusion of the trial I ruled that plaintiff had failed to sustain his charge of fraud in connection with Rev. Little's purchase of the first four annuities. I also concluded that the monthly payments on the first three annuities made by Equitable to plaintiff pursuant to the order of January 10, 1969 are to be returned to Rev. Little since they did not fall within the condemnation of N.J.S.A. 17:35B-10(a)(1). It may be noted that the first three annuities were purchased by Rev. Little prior to his receipt of the letter of October 19, 1965 wherein plaintiff's counsel for the first time asserted a claim against him. The validity of the *432 fourth annuity sold on October 27, 1965 was sustained upon the proposition that Equitable sold this contract in good faith without notice of any claim of plaintiff against Rev. Little.
There remains for determination the issues of whether the monthly payments on the fourth and fifth annuity contracts are reachable by plaintiff in satisfaction of his judgment and whether the fifth annuity contract should be set aside.
The burden of establishing fraud rests upon the party averring it. It will not be presumed. It must be established by competent and satisfactory proof. Circumstances that are merely suspicious will not support an inference of fraud. Epstein v. Bendersky, 132 N.J. Eq. 30 (E. & A. 1942). True, Rev. Little purchased the fourth annuity about one week after he received notice of plaintiff's original claim against him in the sum of $52,500. Prior thereto he had already invested $65,000 in annuities. It would appear that his purchase of the fourth annuity was merely a continuation of his investment program. I cannot conclude that this purchase was made "with intent to defraud creditors," within the purview of N.J.S.A. 17:35B-10. The letter of plaintiff's counsel to Rev. Little dated October 19, 1965 is simply inadequate to support such a finding. Accordingly, the monthly payments on the fourth annuity contract are not subject to execution or other legal process. Plaintiff is directed to return to Rev. Little the monthly payments received thereon pursuant to the order of January 10, 1969.
N.J.S.A. 25:2-3 provides that:
Every conveyance, grant or alienation of real estate, or goods and chattels * * * whether made by writing or otherwise, and every judgment and execution which have been or shall be contrived in fraud, covin or collusion, with intent to hinder, delay or defraud creditors and others of their lawful actions, debts, damages or demands, shall be deemed and taken * * * to be utterly void and of no effect, any feigned consideration, color or other pretense to the contrary notwithstanding.
*433 Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration, without knowledge of the fraud at the time of the purchase, disregard the conveyance and levy execution upon the property conveyed or such obligation. N.J.S.A. 25:2-15(a). Fair consideration is given for property when in exchange for such property or obligation, as a fair equivalent therefor and in good faith, property is conveyed or an antecedent debt satisfied. N.J.S.A. 25:2-9(a). And, of course, every conveyance made with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors is fraudulent. N.J.S.A. 25:2-13.
In order to set aside a conveyance to a third party as a fraud against creditors, the transferee must have participated in or have had knowledge of the transferor's fraudulent purpose. Muirheid v. Smith, 35 N.J. Eq. 303, 308 (E. & A. 1882); Roe v. Moore, 35 N.J. Eq. 526 (E. & A. 1882). There is a distinction between one who purchases for present consideration, which is the situation of Equitable in the case at bar, and one who purchases in satisfaction of a pre-existing debt. As observed in Hersh v. Levinson Bros. Inc., 117 N.J. Eq. 131 (E. & A. 1934):
* * * As to a conveyance made by a grantor actuated by such a fraudulent purpose, there is a well recognized distinction between one who purchases for a present consideration and one who purchases in satisfaction of a pre-existing debt. The former is in every sense a volunteer who, having no motive of interest prompting him to enter into the transaction, does so for the purpose of aiding the fraudulent purpose of the grantor. The latter has an interest to serve. He can keep out of the transaction only at the risk of losing his claim. The law casts upon him no duty of protecting other creditors. He has the same right to accept a voluntary preference that he has to obtain a preference by superior diligence. He may know the fraudulent purpose of the grantor, but the law sees that he has a purpose of his own to serve, and if he goes no further than is necessary to serve that purpose, the law will not charge him with fraud by reason of such knowledge. * * * [at 135]
See also, Smith v. Whitman, 39 N.J. 397, 405 (1963).
*434 A transfer is not made in good faith if the transferee has knowledge of the fraudulent intent of his grantor or if he is aware of circumstances which should have put him on inquiry and which were equivalent to notice of said fraudulent intent. A leading authority for this proposition is Tantum v. Green, 21 N.J. Eq. 364 (E. & A. 1869), where the court stated:
The conclusion to which I have come is the same as that arrived at by the Chancellor, that though Dr. Tantum may not have had such knowledge of the intended fraud as to make his denial thereof perjury, yet he had notice of suspicious, unusual, and extraordinary circumstances, which should have put him on inquiry. That he paid full consideration for the assignments will not suffice. He must not only be a purchaser for value, but a bona fide purchaser without notice of the fraudulent intent of the assignor, or of circumstances which should have put him on inquiry, and which were equivalent to notice. [at 369-370]
To same effect, see Equitable Life Assurance Society v. Patzowsky, 131 N.J. Eq. 49 (E. & A. 1942).
I am satisfied that Rev. Little purchased the fifth annuity on December 3, 1966 with a design to hinder and delay the plaintiff in satisfying the claim against him. He was encouraged to make this purchase while litigation was pending against him by virtue of Muller's letter of November 4, 1966 wherein Muller indicated that the consideration paid for the four annuity contracts was the property of Equitable and "in the long run it might be more difficult for the Trustee in Bankruptcy to collect the monthly instalments and he might conclude that he would not be justified in going to such an expense." Having parted with his remaining cash, Rev. Little thereafter agreed to the entry of a consent judgment against him for $23,000. Both Muller and Hilton were put on notice respecting Rev. Little's concern that his annuities might be subject to execution. The knowledge acquired by the Equitable agents respecting matters lying within the scope of their duties is attributable to Equitable. Handleman v. Cox, 39 N.J. 95 (1963).
*435 The circumstances surrounding the purchase of the fifth annuity were equivalent to notice to Equitable that Rev. Little's design was to hinder and delay plaintiff in the collection of his claim. Yet with this knowledge it aided Rev. Little to insulate his assets (except his monthly payments on the annuities) from future execution by selling him the fifth annuity. And, of course, that annuity was purchased when plaintiff was asserting his full claim of $52,500 against Rev. Little. Accordingly, the fifth annuity contract dated December 3, 1966 will be set aside. Equitable is directed to pay plaintiff $16,117.36, the amount paid by Rev. Little for said annuity contract, less any payments made to plaintiff on said contract pursuant to the order of January 10, 1969. Said sums will be applied in reduction of the amount owed by Rev. Little on the consent judgment. Although Equitable made monthly payments to Rev. Little on this annuity contract prior to January 10, 1969, its knowledge and role in aiding Rev. Little disqualifies it from receiving credit for such payments.