56 N.J. Super. 274 (1959)
152 A.2d 409
SAMUEL B. LESSER, AS TRUSTEE FOR JOSEPH FELLER, ET AL., PLAINTIFF,
v.
H. ERNEST STRUBBE, ET AL., DEFENDANTS.
SAMUEL B. LESSER, AS TRUSTEE FOR JOSEPH FELLER, ET AL., PLAINTIFF,
v.
H. ERNEST STRUBBE, JR., ET AL., DEFENDANTS.
ELEANOR STRUBBE, PLAINTIFF,
v.
SAMUEL B. LESSER, AS TRUSTEE FOR JOSEPH FELLER, ET AL., DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 11, 1959.
*277 Mr. Alfred C. Clapp, attorney for Samuel B. Lesser, as trustee, etc.
*278 Messrs. Van Riper & Belmont (Mr. Walter D. Van Riper appearing), attorneys for Eleanor Strubbe.
Mr. Jack L. Cohen, attorney for Paul R. Kleinberg, trustee in bankruptcy for H. Ernest Strubbe.
SCHERER, J.S.C.
Three suits were consolidated for trial in this proceeding. Plaintiff, as trustee, brought two actions to foreclose two mortgages given by the defendants, H. Ernest Strubbe, Sr. (hereinafter called "Strubbe") and Eleanor Strubbe, his wife, one on properties located in the City of East Orange and Village of South Orange, Essex County, and the other on property in the City of Elizabeth, Union County. Each of the mortgages was in the sum of $600,000 and was given as security for a note of $600,000, dated July 3, 1956, made by West Albany Warehouses, Inc. (hereinafter called "West Albany"), a corporation of New York. This note was primarily secured by a $600,000 mortgage on property in the City of Albany, New York. All of the aforesaid documents were executed simultaneously, as were two guaranty agreements signed by the Strubbes in which they jointly and severally further guaranteed payment of the West Albany note and mortgage. The West Albany note fell due July 3, 1957 and, demand for payment not being met, foreclosure of the New York mortgage, as well as the New Jersey mortgages, commenced. The complaint involving the two Essex County properties alleges that plaintiff has received payments of upwards of $233,000 on account of the principal of the mortgage. Certain title changes have occurred with respect to the New Jersey properties involved in these two foreclosure actions, but these have no bearing on the result here reached.
Strubbe is now bankrupt and, on October 29, 1957, the defendant, Paul R. Kleinberg, was appointed trustee in bankruptcy in the United States District Court for the District of New Jersey. The trustee filed an answer and counterclaim for right of possession and mesne profits, and *279 alleging that the $600,000 loan was usurious in that a bonus was exacted and that the actual amount received for the mortgage was only $505,000. He further alleged that while the mortgage papers were signed by West Albany, a corporation, the loan was in fact made to Strubbe, individually, and therefore subject to the defense of usury. The trustee also alleged that the plaintiff has foreclosed the mortgage which he holds on the New York property and has acquired title thereto; that the property has a market value of $600,000 and therefore the plaintiff's New Jersey mortgages are satisfied in full and should be delivered up for cancellation; that the trustee is entitled to possession of the New Jersey properties, together with a judgment for $233,117 against the plaintiff, representing the amount paid on account of the New Jersey mortgages. The trustee also seeks subrogation of any rights which the plaintiff may have against Eleanor Strubbe. A trial by jury was demanded by the trustee on the issues raised by him, but this demand was overruled under the authority of Associated Metals, etc., Corp. v. Dixon, etc., Inc., 52 N.J. Super. 143 (Ch. Div. 1958), since equitable issues are raised which may only be disposed of by this court.
An answer was also filed by Strubbe, alleging usury and satisfaction of the mortgages. With respect to the Elizabeth property, Strubbe also set up as a defense that this property belonged to Eleanor Strubbe; that the mortgage secured by the plaintiff from her was obtained by fraud and misrepresentation practiced upon her; that she lacked independent advice; that the mortgage was without consideration as to her; that the guaranty agreements had been obtained from her by fraud; that she signed the various documents under a misapprehension as to the effect thereof; that she was not a party defendant to the foreclosure actions, although she was an indispensable party. By amended answer, Strubbe stated that while title to the premises was in fact in his name, he held the property for his wife and it was actually hers.
*280 Eleanor Strubbe filed a separate complaint with respect to the Elizabeth property, alleging that on July 3, 1956, and for many years prior thereto, she was the owner of this property, which is known as 16-22 Stiles Street, Elizabeth, New Jersey. She pleaded in substance the facts above referred to, as set forth in Strubbe's answer, and alleged that she signed the various papers on July 3, 1956 as a result of fraud and misrepresentation; that she had no independent legal advice; that she was then 74 years of age; that this represents her only property; that she had no interest in the West Albany enterprise; that she was induced without consideration to guaranty the debt of West Albany; that her property was free and clear of encumbrances and worth $200,000; that it represented a lifetime of work and effort and constituted her entire assets; that she never received any money as a result of the mortgage or guaranty; that the West Albany mortgage is usurious and void under New York law and it has, in any event, been fully paid and satisfied. She seeks a judgment declaring the guaranty agreements and the mortgage on the Elizabeth property void as to her.
It was agreed by all parties that since proceedings are still pending in the State of New York seeking to have the fair value of the property credited against the plaintiff's mortgage in that state, which credit will directly affect the amount, if any, due on the two New Jersey mortgages, the issues of the accounting for rent collected in New Jersey and the payment of the subsequent lienors in the foreclosure action should be severed and reserved for future determination. The issues thus left for resolution, as set forth in the pretrial order, are:
I. Was the loan on the West Albany property, or any part thereof, a loan to the West Albany corporation or to an individual or individuals?
II. Is the defense of usury available to defendants and, if the loan was tainted with usury, does the law of New Jersey or New York apply?

*281 III. Were the mortgages and guaranty agreements the products of fraud practiced upon Eleanor Strubbe by representatives of the beneficiaries of the trust or others?
IV. Were the mortgages and guaranty agreements void as to Eleanor Strubbe because of lack of consideration or because of mistake, ignorance of the meaning thereof or inadvertence?
V. Of the sums disbursed by the plaintiff, was $165,000 thereof a loan to, or for the benefit of, H. Ernest Strubbe, individually, and not to West Albany, and therefore not within the scope of the guaranty of Eleanor Strubbe?
VI. Can there be a recovery against Eleanor Strubbe, as guarantor of the West Albany debt, if she was not made a party nor given notice of the West Albany proceedings?

I.
The evidence in this case is voluminous and no extended discussion of it will be undertaken, except as is required for a proper understanding of the results reached.
The testimony discloses that in June 1956 the West Albany property was owned by a corporation known as West Albany Warehouses, Inc., a New York corporation controlled by a group of New York residents, who held all of the stock. It was represented by Edward M. Segal, an attorney with offices at Albany, New York, who was also a stockholder. His office was the office of the corporation. Prior to July 6, 1956 the Strubbes were not stockholders of West Albany. This property consists of 58 acres of land with 800,000 square feet of floor space in single-floor buildings. It had formerly been used by the New York Central Railroad as a repair shop for its steam locomotives, but is no longer used. At the time of the closing of plaintiff's mortgages, the West Albany property was encumbered by a $250,000 mortgage held by a private banking firm in New York City. This firm, or one of its partners, also held one-third of the West Albany stock.
West Albany had outstanding 1,000 shares of common stock and 525 shares of preferred stock. On June 1, 1956 a company known as Wolf Oil & Gas Company, Inc., of Newark, New Jersey, of which Strubbe was apparently president, *282 acting through one John Kay, gave a check for $150,000 as a deposit on the purchase of all of the stock of West Albany. This offer, for reasons not given, was never consummated and the check was subsequently returned in August 1956 by Segal to one Harry B. Albert, a New York attorney representing Wolf Oil & Gas Company. In June 1956 Strubbe, individually, made a written offer to the stockholders of West Albany to purchase "all of the issued and outstanding shares of capital stock of the Corporation" upon terms set forth in the offer. Prior to this date, however, Kay, who seems to have been in other financial deals with Strubbe (and who is now in prison), contacted a real estate broker in Newark to secure a mortgage loan on the Albany property. The plaintiff was contacted by the broker and, through him, the persons for whom he is acting as trustee in all of the mortgages were requested to make the loan. A trip to Albany was made by the plaintiff, the broker and some of plaintiff's clients in order to inspect the property. Neither Strubbe nor his wife accompanied them. At Albany plaintiff and his clients met Segal and, after inspecting the property, discussed with him its value, its economic possibilities, and other matters of interest to them in connection with their proposed loan. At the time of the trip the proposed lenders had with them Strubbe's personal financial statement. This statement had been lost prior to trial, but a later statement, dated June 25, 1956, was placed in evidence, showing Strubbe's net worth at that time to be $1,600,000.
The minute book of West Albany discloses that neither of the Strubbes was, as of the date of a special meeting of directors of that corporation held May 31, 1956, a director. The next minutes appearing in the minute book are unsigned carbon copies of minutes of an alleged meeting held March 27, 1957, some nine months after the transaction closed. Plaintiff produced at trial what purports to be a certified copy of minutes of a meeting of the board of directors of West Albany held in Newark on July 3, 1956. These minutes state that Eleanor Strubbe and H. Ernest Strubbe, *283 Sr., as of that date, constituted the board of directors of the corporation. They signed the certified copy as secretary and president, respectively, of West Albany. If there are other minutes of this corporation, they were not produced and are not in the minute book. There are no minutes showing the change in the identity of the board of directors from the Albany group to the Strubbes.
The evidence of Segal, attorney for West Albany and for stockholders holding two-thirds of its stock, that he did not deliver the West Albany stock to Strubbe until July 6, 1956, and that the remaining one-third of the stock was also delivered to Strubbe on that day, makes it clear, and I find as a fact, that no legal meeting of stockholders of West Albany was held prior to July 6, 1956 to elect the Strubbes as directors; that no legal meeting of directors was held to elect them as officers; and that prior to that date they were neither officers nor directors of West Albany. If a meeting of directors was held July 3, 1956  which I doubt  it was clearly illegal and accomplished nothing. The preparation of these minutes was part of a rather elaborate plan contrived to give the appearance of a mortgage loan being made to the West Albany corporation, rather than to Strubbe, individually, for the purpose of giving to the mortgagee the protection of the New Jersey usury statute, N.J.S.A. 31:1-6, or the New York statute, General Business Law, sec. 374 (McKinney's Consol. Laws, c. 20), whichever might be found applicable.
The fact that usury was exacted is admitted. The mortgage made to plaintiff, as trustee for the benefit of his clients, Feller, Gang, E.E.B. Corporation, Cohen and Madan, is in the sum of $600,000. Admittedly, there was a premium of $70,000 charged, so that the net amount to be paid was $530,000. Out of this there was a further deduction of $25,000 for brokerage and counsel fees, reducing the net amount received by West Albany to $505,000. The mortgage was required to be paid in one year, with interest at the rate of 6% per annum. In the event of default, however, *284 interest was to increase to 2% per month. The latter provision for interest, being in excess of the permissible legal rate and in excess of the rate charged before default, is unenforceable as a penalty. Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205 (App. Div. 1959).
The evidence discloses a complete lack of any interest by the plaintiff in West Albany. Segal, as representative of West Albany and its majority stockholders, never received any mortgage commitment papers. These, dated June 19, 1956, were addressed to West Albany in care of Strubbe at his South Orange address. The commitment bears the signatures of Strubbe, as president, and Mrs. Strubbe, as secretary of West Albany, as accepting the mortgage terms. There is some testimony that Mrs. Strubbe never signed the mortgage commitment agreement, and a comparison of her signature on that document with her admitted signatures on other documents indicates that this may very well be true. On June 19, 1956, the date of these papers, neither of the Strubbes was an officer, director or stockholder of West Albany. The commitment was not prepared by the plaintiff, but it was edited by him after its preparation and before submission to the Strubbes. Segal testified that he did not prepare the minutes of the alleged meeting of directors of West Albany which is certified as having occurred on July 3, 1956. Plaintiff never met any of the officers or directors of West Albany after his visit to Albany. He drew all papers for the Strubbes' signatures.
Although there is a denial by the plaintiff that the lenders were aware that the deal involved the purchase of West Albany stock and that part of the proceeds of the mortgage loan was to be used for that purpose, I find that plaintiff was aware of these facts and knew that part of the loan not only was intended, but was required, to be so used in order to bring about the closing. Segal testified that he told the plaintiff and the others in Albany that the deal would have to be a stock purchase because of the tax consequences involved. Segal also said that he delivered the stock *285 to Strubbe in the plaintiff's office, in the latter's presence, on July 6, 1956, at which time the stock was endorsed in blank. Segal delivered two-thirds of the outstanding stock, and the other one-third was delivered at the same time by the New York banking firm. Payment in cash and notes was made by Strubbe at the time of delivery.
The evidence impels the conclusion that this transaction was a mortgage loan to Strubbe, individually, but that in order to avoid the defense of usury the corporate cloak was used.

II.
The mere use of the corporate form cannot be permitted to obscure the true facts and sanction the exaction of usury with impunity and in disregard of our public policy against it.
The Supreme Court, in In re Greenberg, 21 N.J. 213, 220 (1956), said that our courts have taken the position that the application of the usury statute to corporations shall be restricted in order "that sympathetic sweep might be given to the State's policy against usury," citing numerous cases. In his opinion, Justice Jacobs pointed out that our rule is opposite to that in New York, where it has been held that the usury statute should be liberally construed and where the corporate device has been upheld as a compliance with the statute. Jenkins v. Moyse, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205 (Ct. App. 1930); Werger v. Haines Corp., 302 N.Y. 930, 100 N.E.2d 189 (Ct. App. 1951). See also, 74 A.L.R. 205, supra, and Holland v. Gross, Fla., 89 So.2d 255, 63 A.L.R.2d 920, 938-941. A court of equity ought not to lend its aid in support of a usurious exaction but should, as stated in the Greenberg case, support the State's policy against usury.
Plaintiff cites Corradini v. V. & M. Holding Corp., 34 N.J. Super. 427 (Ch. Div. 1955), where the court, relying upon Jenkins v. Moyse, supra, held that the loan *286 was not made to the corporation for the purpose of evading the statute, but in order to comply with it. This case was decided prior to the Greenberg case and, therefore, to the extent that it is in conflict with that case, must be deemed to be overruled. Equity looks to the intent or substance, rather than to the form. 2 Pomeroy's Equity Jurisprudence (5th ed.), sec. 378, p. 40.
Nor does the argument, that since the bonus was paid out of corporate funds the individual defendants cannot complain, have any merit. This argument was made and overruled in Gelber v. Kugel's Tavern, Inc., 10 N.J. 191 (1952), where the court said, at page 196:
"* * * It is generally recognized, however, that an individual may recover usurious payments on loans made in fact to the individual though in form disguised as loans to a corporation and evidenced by obligations executed by it to hide the fact that the lender has exacted an illegal rate of interest from the real borrower."
Both guaranty agreements signed by the Strubbes were prepared by the plaintiff in June 1956 (because, as he said, they hoped to close the loan on June 28, 1956). The long-form agreement contains representations of facts which obviously were not secured from Strubbe, first, because plaintiff had not at that time met Strubbe, and secondly, because Strubbe never saw the property until about one year after the closing. They certainly were not known to Mrs. Strubbe either. This agreement was also prepared for the signatures of Mr. and Mrs. Strubbe as president and secretary, respectively, of West Albany, as well as individuals, and was drawn in such a way as to clothe the bonus payment with as much legality as possible, by the insertion of the acknowledgment by the guarantors that "the profits gained and avails of the said venture will be large and substantial, and that the interest and premium charges to be paid to the Lender under the terms of this agreement will be comparatively moderate in light of such contemplated profits." (Emphasis supplied)
*287 Plaintiff demanded, as additional security, a mortgage on Strubbe's property on Fourth Avenue, East Orange, among others. He required it to be free of mortgages. He knew from his search that there were three mortgage liens thereon aggregating approximately $160,000. It was a condition of closing that these mortgages be paid off. Plaintiff would not permit them to be paid off directly out of the proceeds of the mortgage loan supposedly being made to West Albany. He refused to close title on July 3, 1956 for that reason. Strubbe did not have the cash to satisfy the mortgages, except from the proceeds of the loan. As a result of plaintiff's insistence, a detailed plan was worked out, to which plaintiff was not a party, but of which I am satisfied he had knowledge, and an exchange of checks took place on July 6, 1956, as a result of which the mortgages were paid off by funds other than those emanating directly from the plaintiff. This exchange of checks with a third-party lender enabled the mortgages to be paid, and $80,000 of the money found its way into the attorney account of plaintiff's law firm for the purpose of paying off the existing first mortgage held by an insurance company. While the funds placed in his hands were not actually derived from the mortgage loan, I find as a fact that approximately $160,000 of the plaintiff's mortgage money was used to satisfy Strubbe's personal mortgage obligations and that plaintiff knew it.
Plaintiff argues that to sustain the defense of usury the defendants must establish it "beyond a reasonable doubt." It is true that such language is found in Norton v. Nathanson, 85 N.J. Eq. 409 (Ch. 1916), where the court said, at page 413:
"* * * The burden of proving usury is upon the party setting it up, and the facts necessary to constitute it must be clearly established beyond reasonable doubt by the decided preponderance of evidence. It is not enough that the circumstances proved render it highly probable that there was a corrupt bargain; such a bargain must be proved and not left to conjecture."
*288 But, it seems clear from reading this quotation that the proof there required was not intended to be other than as required in other civil cases  by a preponderance of the evidence. I am of the opinion that the words used did not intend to establish a different rule of proof where the affirmative defense of usury is pleaded than is required with respect to other affirmative defenses. Desmidt v. Desmidt, 130 N.J. Eq. 23 (E. & A. 1941); Bornstein v. Metropolitan Bottling Co., 26 N.J. 263 (1958). The language of the Norton case is also found in Stein v. Wittmer, 117 N.J. Eq. 535, 540 (E. & A. 1935), and again in Ditmars v. Camden Trust Co., 10 N.J. 471, 498 (1952), although in the latter case the words "beyond a reasonable doubt" are used parenthetically, but in none of them is the language critically examined. I do not believe that the defense of usury need be proved except by a preponderance of the evidence, and the above cases are not authority to the contrary.
Plaintiff also argues that under the rule in Ditmars v. Camden Trust Co., supra, 10 N.J. at page 498, a borrower will only be granted relief in a usurious transaction on condition that he do equity by repaying his creditor in full for the amount advanced, with lawful interest. See also 55 Am. Jur., Usury, sec. 108, p. 398. This rule, however, applies only where the borrower is seeking affirmative relief against the lender, and not where usury is set up as a defense.
Since the mortgage loan in this case was made to the individual Strubbe, and not to the West Albany corporation, the defense of usury may be lawfully interposed in both foreclosure actions.
It seems beyond question that the law of New Jersey is applicable to this case. While the basic mortgage on the Albany real estate was signed by a New York corporation, the note, mortgage and all other papers were signed, acknowledged and delivered in New Jersey. The mortgage note dated July 3, 1956, for which the New York mortgage was given as security, provides that "this note and the mortgage securing the same shall be construed and interpreted *289 in accordance with the Laws of the State of New Jersey." The mortgage commitment, dated June 19, 1956, also contains the provision that "the laws of the State of New Jersey shall apply to the entire transaction and shall be used to interpret the several covenants contained in the instruments of closing."
It was held in Mayer v. Roche, 77 N.J.L. 681 (E. & A. 1909), that the proper law of the contract is the law by which the parties thereto intended, or may fairly be presumed to have intended, the contract to be governed. All negotiations in this case were carried on in New Jersey and all payments were made here at closing.
The case of Guardian Life Ins. Co. of America v. Rita Realty Co., 17 N.J. Misc. 87 (Sup. Ct. 1939), cited by the defendants for the proposition that since the mortgage is a New York mortgage under foreclosure in that state, the New York law should apply, is not in point. The mortgage there contained a provision that it should be construed according to the laws of the State of New York, and all negotiations leading to the execution of the mortgage, including the payment of the consideration and the delivery of the mortgage, occurred in the State of New York.
The usury statute of this State is therefore held to be applicable.

III-IV.
It is next urged that the mortgage on the Elizabeth property and the guaranty agreements should be declared void as to Mrs. Strubbe because her signatures on these documents were secured by fraud. Admittedly, the fraud was not practiced by the plaintiff. If Mrs. Strubbe was given false information concerning the nature of the documents she signed on July 3, 1956, her husband was the one responsible. It is said that the mortgage and agreements should not be allowed to stand because Mrs. Strubbe did not have independent legal advice, was aged and infirm, *290 and that the result of the transaction and the present foreclosure of the mortgage on her Elizabeth property is to strip her of all of her property.
There is no doubt that Mrs. Strubbe could lawfully enter into the mortgage and guaranty agreements. N.J.S.A. 37:2-16. The proofs disclose that she is 76 years of age and without business experience. She made a pathetic picture on the witness stand, being extremely nervous and frightened to the point where she had difficulty understanding and answering questions. The apartment house in Elizabeth comprises her entire estate, or, as she put it, "everything she has in the world." She has worked in her husband's ice cream stores for many years doing all sorts of menial tasks, and through earnings thus obtained she accumulated the money which she used to purchase the apartment house. She was not represented by counsel at the time she signed the documents in this case. I find that Harry B. Albert, whom the plaintiff asserts represented both her and Mr. Strubbe at the closing, was not in fact her attorney. Mr. Albert in his testimony denied that he acted as her attorney and said that he never met her but once, that being the day upon which the papers were signed. He said he did not explain any of the papers to her, nor counsel her in connection with them.
Mrs. Strubbe said that her husband told her that the purpose of her signing the documents was to refinance the mortgages on the Fourth Avenue, East Orange, property. This, Mr. Strubbe admits, and in addition he says that he told Mr. Meyers, who took the acknowledgments, not to tell Mrs. Strubbe that she was mortgaging her Elizabeth property because, if she knew that, she would not sign. The testimony does not persuade me that Mr. Strubbe told this to Mr. Meyers, and I do not believe the latter would have permitted her to sign or would have taken her acknowledgment under such circumstances. I am convinced, however, that had Mrs. Strubbe been aware of the nature of the documents she was signing she would not have executed them.
*291 That Mrs. Strubbe was not a participant in the West Albany stock deal is beyond dispute. Yet, the plaintiff, who had never met her, prepared papers in which he named her as secretary of the corporation. There is no evidence indicating that he was ever told she was secretary. At no time during the entire transaction did the plaintiff ever ask to examine the West Albany minute book or stockbook to ascertain the identity of the stockholders, officers or directors of this corporation to which $530,000 of his clients' money was to be paid. The plaintiff never talked to Mr. Strubbe about the transaction until July 3, 1956, the date fixed for the closing.
Mr. Meyers, who is the plaintiff's law partner, took Mrs. Strubbe's acknowledgments. He testified that he gave her a "synopsis" of what each paper contained. There were a great number of documents. The signing took place in the office of Wolf Oil & Gas Company in Newark. Mr. Meyers said that, as to each paper signed by Mrs. Strubbe, he asked her if she understood, and she replied that she did.
It is evident from Mrs. Strubbe's testimony that she is not a well-educated person. It is clear that she signed the papers because her husband asked her to do so and without any knowledge of what was entailed. She said that she was so nervous at the time that she could not even read the papers, but that she saw her husband's signature on them and therefore thought it was all right for her to sign. Unless, however, there is some fraud chargeable to the plaintiff, the deception practiced upon Mrs. Strubbe by her husband will not aid her.
In Henion v. Monahan, 110 N.J. Eq. 361 (E. & A. 1932), the court said, at page 362:
"The general rule governing such a situation is stated in 41 Corp. Jur. 433 as follows: `Where an owner of land is induced by fraud or misrepresentation to execute a mortgage which he would not have given if fully and truly informed of the circumstances, the fraud thus practiced upon him will be fatal to the validity of the instrument. * * * The mortgagee, to be affected by the fraud, must either have participated in it or have knowledge of it; but constructive *292 notice of the fraud may be brought home to him by circumstances.' See, also, Guatelli v. Brown, 84 N.J. Eq. 33; Young v. Taylor, 84 N.J. Eq. 173."
And again, 110 N.J. Eq. at page 364:
"`If a purchaser has before him the facts which should put him on inquiry, it is equivalent to notice of the fact in question, and where such fact constitutes a fraud on a third party, it will not protect the purchaser that he purchased for value.' Tantum v. Green, 21 N.J. Eq. 364."
The evidence adduced as to the unusual circumstances attendant upon the granting of the mortgage, and the proceedings thereafter, impel the conclusion that the mortgagee was put on inquiry and should have ascertained whether or not Mrs. Strubbe actually was aware of the fact that she was mortgaging her only asset and was gratuitously guaranteeing a $600,000 note of a corporation in which the mortgagee had reason to know she had no financial interest. This was not a simple mortgage transaction. It involved the giving of $1,800,000 of security mortgages for a $600,000 note, and the guaranteeing of that note by the individual Strubbes in addition to the giving of the mortgages. There were at least four mortgages on New York and New Jersey properties to be satisfied and the title documents obtained, and there was also the transfer of the West Albany stock. Many checks were drawn and exchanged. It is difficult to understand why, under these circumstances, extreme care was not taken to be certain that this aged and infirm woman knew the effect of her acts. While there is no doubt that no active fraud was committed by the plaintiff, nor participated in by him, the circumstances warrant a finding that constructive notice of the fraud was brought home to him by the circumstances.
This case differs on the facts from Colonial Bldg. & Loan Ass'n. v. Griffin, 85 N.J. Eq. 455 (Ch. 1915), relied upon by the plaintiff, because in that case the wife who mortgaged her property as security for her husband's debt did so with *293 the knowledge and intent to mortgage it, but her defense was that she was induced to do so through the duress of her husband. The court found that there was no duress and fraud could not be imputed to the mortgagee.
In Rose v. Jerome Harvey Development Co., 113 N.J. Eq. 161 (E. & A. 1933), the court refused to void a bond where fraud was alleged, holding that the defendant intended to sign the very instrument he sought to avoid and stating that, to avoid responsibility upon a contract because of false representations of a third party, the other party to the contract must have participated in the fraud or known about it. This rule is also stated in the 2 Restatement of the Law of Contracts, sec. 477(a), p. 912.
The plaintiff was put on inquiry prior to the time the mortgage loan was closed and he parted with his clients' funds. I cannot believe that plaintiff was not aware of the fact that Mrs. Strubbe was not a stockholder of West Albany on July 3, 1956, when she signed the papers. He knew when he prepared the guaranty long-form agreement sometime in June that she was not a stockholder or officer because he recited therein that the Strubbes "are desirous of becoming stockholders and officers of the borrower corporation." I am satisfied that he also knew that she was not a director on that date. He had reason to know, therefore, that her signatures in the capacity of secretary were improper. A simple examination of the minute book or stockbook of West Albany would have shown the true facts, as would an interview with her.
It is argued by defendants and Mrs. Strubbe that she did not have independent legal advice and, since the result of the transaction was to strip herself of her property, the mortgage on the Elizabeth property and the guaranty agreements must be declared void under the doctrine of Haydock v. Haydock Ex'rs., 34 N.J. Eq. 570 (E. & A. 1881); Slack v. Rees, 66 N.J. Eq. 447 (E. & A. 1904); Post v. Hagan, 71 N.J. Eq. 234 (E. & A. 1907). In these cases, however, there were confidential relations established *294 as a result of close family ties or the dependence of the donor upon the donee. Such facts are not present here. The facts in this case are more akin to those in Ellis v. Ellis, 34 N.J. Super. 62 (Ch. Div. 1955). There, although the donor was the mother and the donee her son, there was no dependence of the former upon the latter prior to the gift, but the court nevertheless set the gift aside because he found that, even though the donor had received the advice of her own attorney, she did not understand the nature of her act, nor the results that might flow therefrom.
I find that Mrs. Strubbe did not understand the nature of the transaction and was not made aware that the result of it might be to strip her of her entire estate. The facts of this case justify the imposition of the clean hands doctrine against the plaintiff, although not to the extent of denying him the right to foreclose the mortgage on the Essex County properties. A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 247 (1949); 2 Pomeroy's Equity Jurisprudence, sec. 397, p. 90. While it is true that the transaction between Mrs. Strubbe and the plaintiff was not one of donor and donee, as in the cases last above cited, I believe the rule stated in the Ellis case is here applicable, particularly since Mrs. Strubbe received no consideration for her mortgage or the guaranty agreements, and she could not benefit from the deal. She imposed upon herself and her estate, gratuitously, a $600,000 liability. I do not think she could have been persuaded to do this if she had realized the impact of her acts. Tantum v. Green, 21 N.J. Eq. 364 (E. & A. 1869); Perkins v. Trinity Realty Co., 69 N.J. Eq. 723 (Ch. 1905), affirmed o.b. 71 N.J. Eq. 304 (E. & A. 1906).
Finding as I do that there was fraud in this case practiced upon Mrs. Strubbe, and that constructive notice of the fraud was brought home to the plaintiff by the circumstances of the case, and that the doctrine of unclean hands should be applied, the mortgage on the Elizabeth property will be declared null and void and the guaranty agreements are *295 also nullified as to her. This finding makes it unnecessary to discuss in further detail the issue of whether the mortgages and guaranty agreements are void as to her because of lack of consideration.

V.
There is also no need to decide whether the guaranty agreements are void as to Mrs. Strubbe because $160,000 or $165,000 of the loan was used for Strubbe, personally, and not for the corporation. It is appropriate, however, to comment that the terms of the guaranty agreements are very broad and the lender, under these terms, can without notice to the guarantors perform almost any act in connection with the obligations and the security as he deems necessary or advisable for the protection of his debt.

VI.
Whether the failure to join Mrs. Strubbe as a party defendant to the New York foreclosure action, or to give her notice of that proceeding, precludes a recovery against her on the guaranty agreements need not be determined, in view of my finding that the guaranty agreements are void as to her.
I find the usurious payment of principal to be $70,000, and not $95,000 as contended for by the trustee in bankruptcy. The other $25,000 represents payment of brokerage commissions and counsel fees. While the amount is unusually large, it cannot be classified as part of the usurious exaction.
In view of the conclusions reached, the claim of the trustee in bankruptcy that he is entitled to be subrogated to any rights of the plaintiff against Eleanor Strubbe is denied.
A judgment may be presented in accordance with these conclusions.